Daniel Cohen, Esq.
AZ Bar No. 032552
**CONSUMER ATTORNEYS, PLLC**
68-29 Main Street
Flushing, NY 11367-1305
Telephone: (718) 770-7901
dcohen@consumerattorneys.com

Emanuel Kataev, Esq.
Pro Hac Vice Motion Forthcoming
**SAGE LEGAL LLC**
18211 Jamaica Avenue
Jamaica, NY 11423-2327
Telephone: (718) 412-2421
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Celeste Brace*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Celeste Brace,<br><br>Plaintiff,<br><br>v.<br><br>Southeastern Arizona Behavioral Health Services, Inc.;<br>La Frontera Arizona, Inc.; and<br>La Frontera Center, Inc.,<br><br>Defendants. | Case No. ____________________<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Celeste Brace ("Plaintiff" or "Brace"), through undersigned counsel, respectfully brings this Complaint against Southeastern Arizona Behavioral Health Services, Inc. ("SEABHS"), La Frontera Arizona, Inc.,

("Frontera Arizona"), and La Frontera Center, Inc. ("Frontera Center") (SEABHS, Frontera Arizona, and Frontera Center collectively hereinafter, "Defendants"). Plaintiff alleges matters concerning her own conduct and experiences on personal knowledge, and other matters on information and belief, as follows:

## NATURE OF THE ACTION

1. This case concerns Defendants' termination of Brace on November 8, 2023, after she requested and took family and medical leave and objected to the handling of her leave and sick pay.

2. Plaintiff seeks relief under the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 ("FMLA"), and Arizona's earned paid sick time protections, A.R.S. §§ 23-371–23-381 and 23-364 ("EPST").

3. Although Defendants ultimately approved a portion of Plaintiff's September 2023 absence as FMLA leave, Plaintiff alleges that they subsequently used her protected leave and complaints against her in deciding to discharge her.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2) over Plaintiff's FMLA claims, which is a federal law.

5. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Arizona claim because it arises from a common nucleus of

operative facts; namely, the same leave requests, employment relationship, and discharge as the federal claims.

6. Each Defendant conducted employment-related activities in Arizona and participated in the Arizona employment relationship and decisions challenged here.

7. The claims arise directly from those forum contacts, and this Court has personal jurisdiction over each Defendant.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District.

9. Plaintiff worked at the Inman facility in Benson, Cochise County, Arizona, and Defendants administered her leave through human resources personnel in Tucson, Pima County, Arizona.

10. The Tucson Division is the appropriate division under LRCiv 5.1(a) and 77.1(a), (c), because the employment and leave-administration events arose in Cochise and Pima Counties.

**THE PARTIES**

11. Plaintiff Celeste Brace is an adult resident of Sierra Vista, Cochise County, Arizona, who worked for Defendants in Arizona during the relevant period.

12. Defendant SEABHS operated the behavioral-health workplace at which Plaintiff worked and is identified as her employer on her wage statements.

13. Defendant Frontera Arizona administered Plaintiff's employment-related leave through its human resources personnel.

14. For example, human resources generalist Desiree Saucedo communicated with Plaintiff regarding her FMLA request using a La Frontera Arizona, Inc. signature block identifying an office at 504 West 29th Street, Tucson, Arizona.

15. Defendant Frontera Center is identified as the employer on the Employee Action Sheet terminating Plaintiff's employment effective November 8, 2023.

16. Upon information and belief, it participated in or exercised authority over the termination decision reflected in that document.

17. Upon information and belief, these entities shared management of Plaintiff's employment, centralized human resources and leave administration, and interrelated operations at the relevant workplaces.

18. Their respective roles in paying Plaintiff, administering her leave, and issuing her termination support the allegation that they operated as an integrated employer under 29 C.F.R. § 825.104(c)(2), or alternatively as joint employers under 29 C.F.R. § 825.106.

19. Each is sued for its own participation in, and legal responsibility for, the employment actions alleged here.

20. Upon information and belief, Defendants, considered together as an integrated employer, were engaged in commerce or an industry affecting commerce through their behavioral-health operations and employed at least fifty (50) employees for each working day in at least twenty (20) calendar workweeks in 2022 or 2023, and employed at least fifty (50) employees within seventy-five (75) miles of Plaintiff's Benson worksite when her protected leave began.

21. This allegation is based on the coordinated Benson, Sierra Vista, and Tucson operations, the shared employment functions described above, and Defendants' administration and approval of Plaintiff's leave as FMLA leave.

22. Each Defendant was also an employer or person acting directly or indirectly in the interest of an employer in relation to Plaintiff within A.R.S. §§ 23-371 and 23-374, based on its employment functions and participation described above.

## FACTS

### Plaintiff's work and protected leave

23. Plaintiff began employment on September 6, 2022, as a recovery technician (also described as a behavioral health technician) at the Inman facility in Benson.

24. Her work included monitoring clients' daily activities, wellness, and safety, and performing related administrative duties.

25. Plaintiff ordinarily worked approximately forty (40) hours per week, with additional overtime in some weeks.

26. Her usual schedule was Sunday through Thursday, approximately 3:00 p.m. to 11:00 p.m.

27. By September 7, 2023, she had been employed for at least twelve (12) months and had worked at least 1,250 hours during the preceding twelve (12) months.

28. Plaintiff's 2023 wage statements reflect a $15.00 base hourly rate, with a $1.00 differential for many evening-shift hours, and separate overtime compensation.

29. Her lost earnings include the shifts, hours, and applicable differentials she would have earned absent the unlawful discharge, subject to proof.

30. Plaintiff performed her work satisfactorily and received favorable feedback during her employment.

31. At hiring, she disclosed a criminal history issue that could prevent fingerprint clearance and was reassured that she could work.

32. She continued working for more than a year before her discharge.

33. On September 2, 2023, Plaintiff emailed human resources requesting family and medical leave from September 5 through September 22, 2023, because her mother had been diagnosed with cancer and needed care.

34. The email was copied to Sherri Ourso and Gina Fiscus.

35. On September 5, 2023, Ms. Saucedo responded to Plaintiff concerning the request.

36. On September 7, Ms. Saucedo provided instructions for submitting the request through AbsencePro, Defendants' leave administrator, and explained the certification process and use of available paid time off.

37. During September 2023, Plaintiff also contracted COVID-19, experienced fever and other symptoms, and was unable to work.

38. A September 11, 2023 medical visit documented her illness, a positive September 8 test, and a work-excuse period of September 7 through September 16, 2023.

39. Plaintiff submitted medical documentation in connection with her own serious health condition and requested protection for that absence.

40. Plaintiff's FMLA claim concerns protected leave beginning no earlier than September 7, 2023, when she satisfied the length-of-service requirement, as well as her opposition to perceived interference with those rights.

41. On September 15, 2023, AbsencePro advised that the certification was incomplete or insufficient and identified information to be supplied within seven days.

42. Human resources also told Plaintiff that her leave had not yet been approved and directed her to follow up with AbsencePro.

43. During September 2023, Plaintiff complained to the Company about the failure to approve her requested medical leave and about the withholding of paid leave for her illness and family-care needs.

44. She believed in good faith that the Company was failing to provide the leave protections to which she was entitled.

45. Her objections concerned both protection of her absence and payment of earned sick time.

46. Plaintiff supplied additional medical information.

47. On information and belief, on September 21, 2023, Defendants, through AbsencePro, retroactively approved September 7th through September 16th, 2023 as FMLA leave for Plaintiff's own serious health condition.

48. Plaintiff returned to work on September 17, 2023.

49. Plaintiff also requested use of earned paid time off for qualifying illness and family-care purposes.

50. Her wage statements reflect some PTO payments during and after the September absence.

51. After Plaintiff requested leave, she experienced a deterioration in management's treatment of her.

52. She continued working after her return, including work during the October 14th through 27th, 2023 pay period reflected in her November 3rd wage statement.

**Fingerprint clearance and discharge**

53. Defendants required Plaintiff and other employees to undergo fingerprint processing during 2023.

54. Plaintiff again raised the criminal-history issue she had disclosed at hiring and received assurances that she could continue working.

55. She participated in the fingerprint process.

56. The Arizona Department of Public Safety denied Plaintiff a fingerprint clearance card.

57. A November 2, 2023 Arizona Department of Health Services ("ADHS") letter concerning Plaintiff was addressed to Casa De Esperanza at Defendants' Tucson human resources address.

58. The ADHS letter required a response confirming either suspension or termination preventing contact with persons receiving services, or, if eligible, submission of a complete good-cause-exception application.

59. It also required direct visual supervision by a person with a valid clearance card if Plaintiff continued providing services while an eligible application was pending.

60. Defendants placed Plaintiff on administrative leave in early November 2023.

61. Plaintiff contacted Company personnel about her status and whether she could continue working.

62. On November 8, 2023, Defendants discharged Plaintiff.

63. The Employee Action Sheet identifies denial of level-one fingerprint clearance and Company policy 300.080 as the reason.

64. It does not identify poor job performance as a reason for termination.

65. Plaintiff does not contend that the FMLA or EPST entitled her to perform work prohibited by an applicable licensing statute.

66. She challenges Defendants' use of her protected leave and complaints in selecting discharge and their allegedly unequal treatment of employees with clearance problems.

67. On information and belief, based on Plaintiff's knowledge of her coworker's employment, Cynthia Jones had been unable to obtain fingerprint clearance at a Sierra Vista SEABHS location and had been transferred to Inman, where she continued working for a substantial period.

68. Ms. Jones remained employed after Plaintiff's November 2023 discharge, into 2024.

69. On information and belief, Ms. Jones's clearance difficulty involved the same type of criminal charge Plaintiff had disclosed.

70. Ms. Jones was later terminated by a letter dated May 8, 2024, citing denial of clearance and failure to apply for a good cause exception.

71. Plaintiff relies on the different treatment and timing preceding that termination, not on an assertion that Ms. Jones was never discharged.

72. Plaintiff alleges upon information and belief that Defendants' handling of her clearance status, compared with their extended retention or transfer of Ms. Jones, reflected selective enforcement influenced by Plaintiff's protected leave and complaints.

73. The employees' clearance records, exception applications, duties, decisionmakers, and opportunities to continue in lawful work are within Defendants' records.

74. The discharge occurred less than ninety (90) days after Plaintiff's September requests for leave and sick pay and her complaints about their handling.

75. Defendants' human resources personnel had actual notice of those requests and complaints.

76. On information and belief, the personnel who participated in the discharge knew of that protected activity through their involvement in, or access to, the centralized employment and leave process.

77. Plaintiff alleges that the sequence of her leave and complaints followed by discharge, the change in management's treatment, the earlier assurances despite knowledge of her criminal history, her satisfactory work, and the differential treatment described above support an inference that protected activity contributed to the discharge and that the stated reason did not fully explain it.

**Willfulness and resulting harm**

78. Defendants maintained a human resources function and a third-party FMLA administration process, instructed Plaintiff concerning her statutory leave, and approved her qualifying absence.

79. Plaintiff's complaints also placed Defendants on notice that she was asserting leave and paid-sick-time protections.

80. Upon information and belief, Defendants knowingly used Plaintiff's protected leave and complaints against her in deciding to discharge her, despite their knowledge of the protections they were administering, or acted with reckless disregard for whether that retaliatory conduct violated those protections.

81. The alleged willfulness is the deliberate adverse use of protected activity and selective enforcement described above, rather than a certification-processing mistake alone.

82. As a result of the discharge, Plaintiff lost wages, employment benefits, and other compensation and incurred economic losses.

83. She has sought and obtained other work and will account for interim earnings and other proper mitigation offsets in proving her losses.

84. Plaintiff seeks relief for the willful November 8, 2023 discharge within the three-year periods provided by 29 U.S.C. § 2617(c)(2) and A.R.S. § 23-364(H).

85. The September events also supply background, protected activity, and evidence of motive for that discharge.

**COUNT I**
**FMLA Interference (Through Retaliatory Discharge)**
**29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(c)**
**(Against All Defendants)**

86. Plaintiff incorporates paragraphs 1 through 85.

87. Defendants were covered employers and Plaintiff was an eligible employee for the protected leave beginning September 7, 2023.

88. Plaintiff gave notice, submitted medical documentation, and took qualifying leave for her own serious health condition, which Defendants ultimately approved.

89. Defendants interfered with Plaintiff's exercise of FMLA rights by using her request for and use of protected leave as a negative factor in the November 8, 2023 decision to discharge her.

90. Approval of the leave did not permit Defendants to penalize Plaintiff for taking it.

91. The use of protected leave in the discharge decision prejudiced Plaintiff by causing the loss of employment and compensation alleged above.

92. Defendants' violation was willful for the reasons alleged in paragraphs 38 through 40.

93. Under 29 U.S.C. § 2617, Plaintiff seeks lost wages, benefits, and other compensable losses, interest, liquidated damages measured by the recoverable monetary loss and interest, appropriate equitable relief, and reasonable attorneys' fees, expert witness fees, and costs.

**COUNT II**
**FMLA Retaliation**
**29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(e)**
**(Against All Defendants)**

94. Plaintiff incorporates paragraphs 1 through 93.

95. Plaintiff engaged in protected opposition by complaining during September 2023 about the Company's failure to approve and protect her medical leave.

96. She reasonably and in good faith believed that the handling of her leave violated the FMLA.

97. Defendants knew of Plaintiff's opposition and discharged her on November 8, 2023 because she had complained.

98. Upon information and belief, absent that opposition, Defendants would not have discharged Plaintiff when and in the manner they did.

99. The circumstances alleged here support that causal connection and Plaintiff's allegation of pretext.

100. This count concerns retaliation for Plaintiff's objections to perceived violations, in addition to the adverse use of leave itself alleged in Count I.

101. It is pleaded alternatively to the extent the Court treats any part of the same conduct as interference.

102. Defendants' conduct was willful, caused the economic harm alleged above, and entitles Plaintiff to the monetary and equitable remedies, liquidated damages, interest, fees, and costs available under 29 U.S.C. § 2617.

**COUNT III**
**Violation of EPST**
**A.R.S. §§ 23-374 and 23-364**
**(Against All Defendants)**

103. Plaintiff incorporates paragraphs 1 through 102.

104. Plaintiff was an employee protected by the EPST.

105. Her requests for paid time off for her own illness and care of her ill mother concerned purposes protected by A.R.S. § 23-373(A)(1)–(2).

106. She also complained in good faith that earned sick pay had been withheld.

107. Defendants retaliated against Plaintiff for requesting or using earned sick time and for objecting to perceived violations by terminating her on November 8, 2023, in violation of A.R.S. § 23-374(A)–(B) and § 23-364(B).

108. To the extent Plaintiff was mistaken about her available paid-time balance, her good faith complaints remain protected under A.R.S. § 23-374(D).

109. The discharge occurred within ninety (90) days of Plaintiff's September protected activity, giving rise to the rebuttable presumption of retaliation under A.R.S. § 23-364(B).

110. Plaintiff also relies on the knowledge, timing, and differential treatment alleged above as evidence of retaliatory causation.

111. On information and belief, Defendants deliberately punished Plaintiff for invoking these protections, knowing that retaliating against her was prohibited or recklessly disregarding that prohibition.

112. The violation was willful within A.R.S. § 23-364(H) and caused the losses alleged above.

113. Under A.R.S. § 23-364(E) and (G), Plaintiff seeks appropriate legal and equitable relief, compensation sufficient to remedy her harm and deter future violations, the statutory retaliation amount of not less than $150.00 for each day of the violation's duration as determined by the Court, and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment for Plaintiff and against each Defendant to the extent of its liability on the claims proven;

B. Award lost wages, employment benefits, and other compensation recoverable under the applicable statutes, together with appropriate interest and subject to lawful mitigation offsets;

C. Award liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) in an amount equal to the recoverable FMLA monetary loss and interest, without applying that multiplier to an award of equitable front pay;

D. Award the compensation and statutory retaliation relief authorized by A.R.S. § 23-364(G), without duplicating recovery for the same loss;

E. Grant appropriate equitable relief under the applicable statutes, including reinstatement to lawful employment or front pay in lieu of reinstatement if warranted by the evidence;

F. Award reasonable attorneys' fees, expert witness fees where authorized, costs, and applicable prejudgment and post-judgment interest; and

G. Grant such other relief as the Court finds just and proper under the pleaded statutes.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Daniel Cohen, Esq.*
Daniel Cohen, Esq., AZ Bar No. 032552
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing, NY 11367-1305
Telephone: (718) 770-7901
Facsimile: (718) 715-1750
dcohen@consumerattorneys.com

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
SAGE LEGAL LLC
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc
*Pro Hac Vice Motion Forthcoming*

*Attorneys for Plaintiff*
*Celeste Brace*